Good morning, Your Honors. May it please the Court. This is Kevin Long on behalf of the Respondents. We are petitioning this Court to reverse the judgment of the lower courts or, in our terms, to remand. Mr. Long, I spent a lot of time in my life reading briefs, and I read your brief with great care. And on page 15 of your brief, the last full paragraph, you write as follows. The, quote, Asylum Officer Training Lesson Plan, close quote, itself of the service specifically covers this issue. Where in the world do I get an asylum officer training manual? And if I find one, is that authority that is binding on this Court to hold as you request? Why do you cite this stuff in your brief? Long, Your Honor, the purpose for that was, well, it might not be binding authority, but it could be. But you want me to sit here and read it, and I've got to apply the law. I don't apply a training manual. Yes, Your Honor. You should understand that. Yes. It's not even – it doesn't even raise to the dignity of a regulation adopted by the Secretary. Right? Yes. If you've got some Ninth Circuit case law that says something about what you're discussing, I'm very interested in that. Or I'm even more interested if the U.S. Supreme Court has said something about what you're discussing. Yes, Your Honor. But this stuff, I think you're wasting your client's time and money when you put this kind of stuff in the brief, because that's my reaction to it. And I just thought I'd let you know. If the – as you said, if the low authority even requires that, So there's a one-year statute of limitations. That's statutory, right? That's correct, Your Honor. So you invoke the bar and get on with it, right? Yes. Okay. I agree with you on that. That's about a three-liner in your brief, and it's – that's it? Okay. Thank you, Your Honor. Mr. Long, it occurs to me that if the jurisdictional issue is sort of off the table here, doesn't our decision, the recent decision in Falcom, Corice, address your streamlining issue as well? So we would have to follow our decision that streamlining is permissible. So that takes care of the second issue that you raised? The second? Yes, Your Honor. Okay. Then if that's the case, then I'd like to hear your argument with regard to whether or not we need to remand because of the fact that, as I understand it from the record, there was never a ruling on the claim for withholding. Is that – am I correct in that? Your Honor, I believe you are correct that the – yeah, the judge never made any finding on that, on the withholding issue. And I take it the reason he didn't reach the withholding issue was that he made the adverse credit benefit? That's correct, Your Honor. Okay. If you wouldn't mind addressing that for us, that would help me. Yes, this particular case involves both the one-child policy and religious persecution in China. And the respondent was married, had two children, which in and of itself already violated one-child policy. He joined Anaguan church and, as a result, was detained, was beaten, was severely beaten, and he had to come to the United States to seek asylum. Of course, that wasn't the original purpose of his coming to the United States, but upon learning the fact that his pastor, whom he had a close relationship with, was also detained and killed in prison, that became a trickling factor for which he decided to apply for asylum, withholding, and Article 3 of the U.N. Convention against Torture Relief. And is it your argument that because that didn't occur until after he came to the United States, that explains why he didn't file his asylum application? Yes, Your Honor. Yes, absolutely. Yes. And there was a reasonable time period for which he had learned about the death and killing of the pastor. I believe it was about four or five months after he learned of the death. Go ahead. I would like to clarify. If there's any other issue you would like me to clarify. If not, I would just have the rest be considered under submission. Okay. Thank you. Thank you. Yeah. What was the date this little boy was born? John Andre, for the Respondent. Was the question addressed to me or to? Anybody that knows. I believe that the boy was the first child was born in 1985. In what? October. In October. Was it? Well, the second child was. What was the date in October? First child was October 85. Second child was. What date in October? What date? Yeah. I refer to my colleagues for that. Because I thought I remember. This kid was born on my birthday. Big day. You couldn't have known that. No. I thought I saw that here. Counsel, I have a question. Yes. The Petitioner didn't ask for a stay in this case. And, of course, the government hasn't indicated one way or another whether it would have opposition to a stay. But has the alien been sent back? Not to my knowledge. So it's the policy of the Administration now to just keep all these people until all this litigation is over with and we're wasting our time with this whole stay process? There is no such policy, Your Honor. But why, you know, we're getting inundated with appeals. And the claim of the Attorney General is that they're trying to clear the decks and get these undocumented aliens on their way home. And yet here's a case where you have an undocumented alien that's in the United States, doesn't seek a stay, and there's nothing to prohibit you from sending that alien back home, and there's nothing to prohibit the case from going forward to its conclusion. So is there some policy with relation to this? I believe that the policy with respect to removals is that the Department of Homeland Security focuses on individuals who are deemed to be more dangerous in terms of focusing the resources on removing them. Those issues, the question of dangerousness is never presented to this Court, is it, as such? Well, in terms of whether or not somebody is removable, yes. It's often presented in terms of whether or not they can remain in the country. Why do you bring this petition to put to send them off anyway if you don't care? But, well, they do care, but they have limited resources. And it would be, I think if the resources were unlimited, then certainly. But you're trying our resources. I mean, we're on a calendar all week here with immigration cases. I understand, Your Honor. Yes, but it's full employment, you know. It's good for everybody. Yeah. Everyone that leaves creates a job opening for the Administration, I guess. Do you have, if for any reason we have to remand, should we enter a stay? No, Your Honor. The actually the stay process should originate with the agency. If Mr. Zu desires a stay, he should first actually go there. No. The legislation now gives us the authority. We can't enter a stay. A stay is not proper unless another decision is entered by the Court. That's in the statute expressing. We are in the business of staying deportations. Your Honor, the agency. If you may not agree with it and you contest it, then there's a standard by which we consider it and we can still enter over your objection. That is right in connection with a pending case, Your Honor. But I don't know. It's a pending case. But I think what Your Honor is suggesting is that removal be stayed while the case is on remand. And I would question the Court's authority to stay pending a remand. Well, we can stay until the mandate goes down. Yes. And then you have to start all over again. Then I think if the case were remanded, then the petitioner would be required to request a stay initially from the agency. And if that were denied, then there may be a possibility of getting judicial review of the denial. But he would have to exhaust his remand. All right. It takes, you know, and he may, Mr. Long may decide to go to the Supreme Court with this case for some crazy reason. I don't know what's on his mind. But the stay would stay in force for that period, too, wouldn't it? Yes. If the Court were to enter a stay, we would certainly like to have the opportunity to look at it. We'll see if he applies for one. Well, Mr. Henry, since we're talking about the hypothetical here, if our mandate had issued and it was remanded and the agency denied a stay, how could you invoke judicial relief to litigate the stay question? Jeff Fallahabias? Petition in district court? If the stay were denied while the case were pending before the board, we would, I guess at that point that the only possible remedy would be a habeas petition as much as we would not desire that result. I don't see how we would have a jurisdiction. It would be premature to come to this Court again for a stay. Right. But the central point being that this Court would lose jurisdiction to have a stay. What if we do a partial remand and retain jurisdiction before we enter a mandate? That, I don't think it would be proper, Your Honor, because it would be essentially splitting jurisdiction between this Court and the board. I think it has to be either one or the other. I'm exploring. I'm not too serious about this. This is what circuit judges talk about when they go back in that conference room. At one point, I believe Judge Tallman, you made a point during prior argument about the immigration judge not entering an order on withholding. And actually, I believe that the immigration judge did on page 102 of the record, which is page 17 of the actual judge's decision, the immigration judge's decision. Okay. I'm with you. The first full paragraph, the last sentence, the same failure to prove a claim of well-founded fear would also cause the Court to deny the higher standard of clear probability of persecution. Okay. So there was a holding on withholding. And I also agree with the Court that jurisdictional question resolves any issue about his asylum eligibility because the Court doesn't have judicial review to review that determination, the one-year limitation issue. The withholding issue is arguably a live issue before the Court, but the immigration judge specified a number of reasons for, again, doubting the plausibility and the credibility of Mr. Sue. One, the inconsistency in his account with respect to the family planning claim was that he did not make any mention whatsoever in his asylum application of any alleged sterilization of his wife. And he also neglected to mention anything about that in his direct testimony. It was only on cross-examination that the claim about sterilization came out. And the immigration judge considered that to be inconsistent with his asylum application. It's not an inconsistency in the concept of sterilization or no sterilization is placed at issue. It just was not mentioned in one document, but it's perfectly consistent to speak of it in testimony later on. It doesn't make – it doesn't – the premise isn't affected as to the credibility because of that. Well, I would, again, respectfully disagree. I think if somebody – well, another point that I should have made earlier was that he was actually asked on direct examination if anything had happened to his wife after the birth of his second child, and he said no. And so then he came back on cross-examination and said that she had been sterilized. He said those were two inconsistent accounts. And in addition, the Court has consistently held that an inconsistency between the application and the testimony can be a basis for an adverse credibility determination, particularly when the inconsistency goes to the heart of the substantive claim. In addition, there was no evidence whatsoever that he presented that the second child even existed, even though he claimed that there was a second child. There was nothing in the record to verify that. There was no corroboration. I see that my time has expired. I would just sum up by reiterating that this is another instance in which the immigration judge specified a number of implausibilities and inconsistencies in the account and that provided substantial evidence for the adverse credibility determination. Thank you. Roberts. Thank you, counsel. Breyer. I have rebuttal. Find out the birthday. Your Honor, I just. Justice Breyer, this is persistent. To briefly. I thought I saw that somewhere. I can't find it. I never met anyone that was born on my birthday that I didn't like. This case was a complicated case in terms of the persecution resulting from both the one-child policy and the religious beliefs. And as I stated earlier, the facts indicate that the respondent was. He had two children. And that in and of itself is a violation of the Chinese one-child policy. And he was subject to termination from his employment, fines, harassments, just for that alone. And he did present evidence indicating that he had two children, including, I believe, photographs of his family, entire family of four. As far as the inconsistency counsel just mentioned, but as you pointed out earlier, there are overwhelming evidence of persecution, whether it's religion or one-child policy. The mere fact that there might be some inconsistency, joint testimony and the application should not be conclusive as to whether he's credible. And the immigration judge has made numerous findings which were minimal in nature, which we believe he was merely trying to discredit the respondent. The overwhelming evidence presented testimony in court indicate that the respondent was severely persecuted. There's no question about it. I think you can tell from the testimony yourself. That's all I have to ask. Thank you. Thank you. That matter stands submitted.
judges: Pregerson, Beezer, Tallman